IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DR. FORTUNEE MASSUDA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 12 C 9683 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| PANDA EXPRESS, INC., PANDA | ) | |
| RESTAURANT GROUP, INC., PANDA | ) | |
| MANAGEMENT COMPANY, INC., | ) | |
| ANDREW CHERNG, and PEGGY | ) | |
| CHERNG, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Dr. Fortunee Massuda brings suit against Panda Express, Inc., Panda Restaurant Group, Inc., Citadel Panda Express, Inc. (collectively "Panda Express"), Andrew Cherng, and Peggy Cherng for unjust enrichment, fraud, civil conspiracy, fraudulent transfer, and aiding and abetting a breach of fiduciary duty. Defendants move to dismiss all of the claims against them. For the reasons stated below, the motion is granted in part and denied in part.

### I.    Facts

The following well-pled facts, which the Court briefly sets forth, are accepted as true for purposes of this motion to dismiss. From 1993 to 1998, a partnership called the Rezko-Citadel partnership, which was a joint venture between Panda Express and Rezko Concessions, Inc. ("Concessions"), owned and operated numerous Panda Express restaurants in five Midwestern states. (Compl., Dkt. # 1, ¶ 1.) Concessions was a majority owner of and controlled Rezko Enterprises, LLC ("Enterprises"), a Delaware limited liability company controlled by Tony Rezko, and Enterprises in turn wholly owned and controlled PE Chicago, LLC, a Delaware limited liability company. (*Id*. at ¶ 11; Compl., Ex. 1, Rezko-Citadel Ltd. P'ship Fin. Stmts., Dkt. # 1-1, at 6, PageID#36.) In late 1997/early 1998, Massuda invested $4,000,000.00 in Enterprises to become a 10.67% owner. (Compl., Dkt. # 1, ¶ 12.) In 1998, PE Chicago took over as the Rezko-Citadel partnership's general partner. (*Id*. at ¶ 1.) In June of 2006, knowing that Tony Rezko, the managing member of Enterprises and PE Chicago, was under severe financial and legal distress, and desperate for funds, Panda Express bought out PE Chicago's 50% interest in the Rezko-Citadel partnership at a price many times less than the fair value of that interest. (*Id*.) At the time of the purchase, Panda Express knew that Massuda and others had significant ownership interests in PE Chicago. (*Id*.) In fact, about two months before the Defendants purchased PE Chicago's 50% interest in the Rezko-Citadel partnership, Massuda

directly contacted Defendants and inquired about selling her interest in Enterprises, the LLC that wholly owned and managed PE Chicago. (*Id*.) Defendants, however, told her that her interest was "worthless." (*Id*. ¶ 49.) Despite knowing of Massuda's interest in Enterprises, Defendants conspired with Tony Rezko to acquire PE Chicago's entire interest in the Rezko-Citadel partnership at a price far less than the fair value of such interest and to funnel the proceeds of the transaction to Rezko personally thereby depriving PE Chicago, and those like Massuda who had interests in PE Chicago, of the money to which they were rightfully due. (*Id*. ¶ 1.)

## II.    Standard

When considering a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss, the Court accepts the well-pleaded factual allegations as true and draws all reasonable inferences from them in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). However, a complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" and set forth facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.   Analysis

### A.    Are the claims derivative or direct?

Defendants first argue that Massuda lacks standing because her claims can only be litigated derivatively on behalf of PE Chicago, LLC, the purportedly injured company.[1] "If the nature of the injury is such that it falls directly on the business entity as a whole and only secondarily on individual investors 'as a function of and in proportion to [their] pro rata investment in the [entity],' then the claim is derivative and must be prosecuted on behalf of the entity." *Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.*, No. Civ. A. 7092–VCP, 2012 WL 6632681, at *8 (Del. Ch. Dec. 20, 2012) (citation omitted). The test for determining whether a claim is derivative thus depends on the answers to two questions: "(1) who suffered the alleged harm; and (2) who would receive the benefit of any recovery or other remedy." *Id.* "If the corporation alone, rather than the individual stockholder, suffered the alleged harm, the corporation alone is entitled to recover, and the claim in question is derivative." *Feldman v.*

---

[1] "Although federal law generally controls the question of standing, whether the shareholder's claims are derivative or direct for purposes of the shareholder standing rule is controlled by the law of the state of incorporation." *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 762 (7th Cir. 2008). Here, both Enterprises and PE Chicago are Delaware limited liability companies. (Compl., Ex. 1, Rezko-Citadel Ltd. P'ship Fin. Stmts., Dkt. # 1-1, at 6, PageID#36.) "[C]ase law governing corporate derivative suits is equally applicable to suits on behalf of an LLC." *VGS, Inc. v. Castiel*, No. Civ. A. 17995, 2003 WL 723285, at *11 (Del. Ch. Feb. 23, 2003).

*Cutaia*, 951 A.2d 727, 732 (Del. 2008). "Conversely, if the stockholder suffered harm independent of any injury to the corporation that would entitle him to an individualized recovery, the cause of action is direct." *Id*.

As noted above, Massuda brings claims for unjust enrichment, fraud, civil conspiracy, fraudulent transfer, and aiding and abetting a breach of fiduciary duty. Defendants contend that any injury asserted by Massuda is actually one to PE Chicago, and therefore, she cannot pursue direct claims against them. Massuda, on the other hand, argues that PE Chicago and the related entities were simply alter egos of Tony Rezko. Accordingly, because Tony Rezko, and therefore PE Chicago, received $3.2 million from Defendants, PE Chicago suffered no harm. (Pl.'s Resp., Dkt. # 38, at 6).

But Massuda's own allegations belie her argument that PE Chicago suffered no harm. For example, she alleges in relevant part that: (1) "Defendants intentionally defrauded . . . Massuda, PE Chicago, and Enterprises out of the fair market value of *PE Chicago's* 50% interest in the Rezko-Citadel partnership (Compl., Dkt. # 1, ¶ 46) (emphasis added); (2) "Defendants falsely and misleadingly represented that the purchase price it offered for *PE Chicago's 50% interest* in Rezko-Citadel represented a fair value (*id*. ¶ 49) (emphasis added); (3) "Defendants and Tony Rezko . . . caused *PE Chicago* to transfer its 50% interest . . . at a price that was well below fair value) (*id*. ¶ 58) (emphasis added); (4) "*PE Chicago* did not receive a reasonably equivalent value . . . in exchange for the transfer of its partnership interest to Panda Express" (*id*. ¶ 79) (emphasis added). As to these and similar allegations, any harm that Massuda suffered was derivative of the injury sustained by PE Chicago for allegedly not having received fair market value for its assets. Except as described below, Massuda alleges no injury independent of that suffered by PE Chicago. Moreover, any recovery based on these claims would, in the first instance, go to PE Chicago. Therefore, the Court concludes that, other than the one fraud claim described below, Massuda's claims are derivative. *Ravenswood Inv. Co., L.P. v. Winmill*, No. Civ. A. No. 3730–VCN, 2011 WL 2176478, at *6 (Del. Ch. May 31, 2011) (finding breach of fiduciary duty claims that company president voted company shares in favor of a sale out of self interest and that company executives improperly received compensation from an affiliate were derivative and not direct).

Nor is Massuda's claim of judicial estoppel persuasive. "Judicial estoppel applies when a party takes a position contrary to a position that was accepted by a court in a prior judicial proceeding." *Buchanan v. Graham*, No. 11 C 3135, 2013 WL 1283405, at * 4 (N.D. Ill. Mar. 25, 2013). In a case that PE Chicago and another investor brought in a different court in this district, Defendants argued that PE Chicago could not assert the claims that Massuda asserts here because it was a party to the transaction at issue and could not have been deceived by it. The district court in that case agreed and dismissed PE Chicago's tort claims. (*Sirazi v. Panda Express*, 08 C 2345 (N.D. Ill.), Dkt. # 228.) Massuda now argues that because of their argument in the *Sirazi* case, Defendants are judicially estopped here from arguing that the tort claims are actually PE Chicago's claims and not Massuda's. But, as Defendants note, the standing issue and the merits issue are two different inquiries. Defendants in the *Sirazi* case did not assert that PE Chicago lacked standing; instead, they argued that the claims had no merit because PE

Chicago was a party to the transaction. Simply because another court held that PE Chicago's tort claims had no merit does not mean that it is not the proper party to assert them. The positions are not inconsistent and the Court finds no basis for judicially estopping Defendants from making the standing argument they set forth here. *Buchanan*, 2013 WL 1283405, at *4 (judicial estoppel is an "extreme remedy" and "requires that the present position be 'clearly inconsistent' with one successfully taken at a prior time") (citations omitted).

Finally, Massuda's unsupported argument that her injury is independent because "[a]ll shareholders in the company were not harmed equally" is inapposite. *Tooley*, 845 A.2d at 1038 (disagreeing with earlier opinion which stated that "a suit must be maintained derivatively if the injury falls equally upon all stockholders" and finding that test to be "confusing and inaccurate").

The Court concludes that the claims based on Defendants' alleged failure to pay fair market value for PE Chicago are derivative claims and Massuda's attempt to eliminate PE Chicago from the calculation by asserting it was an alter ego of Tony Rezko is unavailing. *Feldman*, 951 A.2d at 733 ("creative attempt[s] to recast . . . derivative claims" as direct are "disfavored").

The only allegation that refers to an independent injury is the allegation included in the fraud claim that "[t]he Defendants falsely and misleadingly represented to Dr. Massuda that her interest in Enterprises and PE Chicago was 'worthless.'" (Compl., Dkt. # 1, ¶ 49.) The Court will address this claim in Section III.C. below.

B. <u>Can Massuda allege derivative claims</u>?

Defendants next argue that Massuda also cannot bring the claims derivatively. First, they argue that the claims have already been settled and released by PE Chicago. The *Sirazi* case, where PE Chicago was also a plaintiff, ended in a settlement and release (the "Settlement Agreement") in which PE Chicago and Sirazi agreed "on behalf of themselves and their agents, employees, officers, directors, representatives, assigns, heirs, executors, trustees, joint venturers, partners, attorneys, successors, and assigns" to:

> absolutely, fully and forever release, relieve, waive, relinquish and discharge Defendants and all of their past, present and future partners, officers, directors, employees, agents, attorneys, parent companies (including Rezko Concessions, Inc. and Rezko Enterprises LLC), subsidiaries, affiliates, stockholders, accountants, insurers, predecessors, successors, assigns, and divisions (the "Released Parties"), of and from all disputes, claims, causes of action, actions, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses, liabilities and demands of whatever kind and character that now exist, or may exist or have existed, from the beginning of time until the present, known or unknown, foreseen or unforeseen, liquidated or unliquidated, potential or actual, against Defendants arising from all matters, facts, events and circumstances

relating to the Rezko-Citadel Partnership (the "Released Claims").

(Settlement Agreement, Dkt. # 28, § 4.1.)

In this case and the *Sirazi* case, Massuda and PE Chicago, respectively, asserted claims of unjust enrichment, fraud, conspiracy to defraud, aiding and abetting a breach of fiduciary duty, and violations of the Illinois Uniform Fraudulent Transfer Act for both actual fraud and constructive fraud making almost the identical allegations. (Compl., Dkt. # 1, ¶¶ 39, 56, 68, 71, 87; *Sirazi v. Panda Express*, No. 08 C 2345, 1st Am. Compl., Dkt. # 120, ¶¶ 48, 55, 65, 77, 80, 94.)

Section A of the Settlement Agreement identifies the claims that PE Chicago asserted in the *Sirazi* case as "unjust enrichment, civil conspiracy, breach of fiduciary duty, breach of contract, . . . and violations of the Illinois Fraudulent Transfer Act . . . *based upon the transfer of PE Chicago's 50% interest in the Rezko-Citadel Partnership in June 2006*." (Settlement Agreement, Dkt. # 28, Section A at 1) (emphasis added.) Further, § 2.1 of the Settlement Agreement states that PE Chicago "compromise[d] and settle[d]" each of these claims and "agree[d] that this Settlement Agreement shall constitute a bar to [its] making *any Claims*, including filing of any other action related to or arising under the Rezko-Citadel Partnership at *any* time or for *any* reason." (*Id*. § 2.1) (emphasis added.) Based on the plain language of the Settlement Agreement, the Court concludes that Massuda's claims, which all "relat[e] to" the Rezko-Citadel partnership and, for the reasons discussed above, are actually those of PE Chicago, are barred.

Massuda's arguments to the contrary are unpersuasive. Massuda argues, as already discussed above, that because PE Chicago, as a plaintiff in the *Sirazi* case, could not assert the alleged claims based on the *Sirazi* court's ruling that "the sale was not concealed from PE Chicago" (Mem. Op. Order, *Sirazi v. Panda Express*, 08 C 2345 (N.D. Ill. Jan. 13, 2012), Dkt. # 234, at 5), PE Chicago has no claims with respect to the fraudulent transfer at issue in this case. But, as Defendants point out, the *Sirazi* court's rulings dismissing PE Chicago's claims in the *Sirazi* case were merits-based determinations, not ones based on a lack of standing. (Pl.'s Resp., Dkt. # 50, at 5-6.) Massuda argues that "[a] claim cannot be derivative if the company cannot assert the claim in the first instance" and that PE Chicago cannot settle claims that it did not possess. (*Id*. at 2.) As noted above, simply because the *Sirazi* court determined that PE Chicago's claims lacked merit does not mean that PE Chicago "did not possess them" or that PE Chicago could "not assert them in the first instance." The *Sirazi* court concluded that PE Chicago's claims were substantively unsuccessful. That does not mean that PE Chicago cannot attempt to allege derivative claims here.

Because Massuda's claims are actually derivative claims of PE Chicago, and PE Chicago has released any and all claims associated with the transfer of its 50% interest to Rezko-Citadel, the Court grants Defendants' motion to dismiss Massuda's claims. Because the Court concludes that the claims are derivative and have been settled, it does not address Defendants' arguments that Massuda has not plead current ownership in Enterprises or that she has failed to make a

demand that PE Chicago or Enterprises sue on their own behalf.

    C.    Individual Fraud Claim

        1.    *Is Massuda's individual fraud claim time-barred?*

Massuda alleges that the sale of PE Chicago's interest in the Rezko-Citadel partnership occurred in June 2006. Claims for fraud are subject to a five-year statute of limitations. *Estate of Brown v. Arc Music Grp.*, 830 F. Supp. 2d 501, 511 (N.D. Ill. 2011); *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1028-29 (Ill. 2012).[2] Thus, generally speaking, the limitations period for Massuda's fraud claim expired on June 1, 2011, but she did not file suit until December 5, 2012, about a year and a half after the limitations period expired.

However, in Illinois, the discovery rule "postpone[s] the start of the period of limitations until the injured party knows or reasonably should know of the injury and knows or reasonably should know that the injury was wrongfully caused." *Khan,* 978 N.E.2d at 1028-29. According to Massuda, she did not know of Defendants' role in the alleged fraud until sometime after December 5, 2007 (five years before she filed suit). Defendants contend, however, that Massuda knew of her claims at least in February 2007 and point to a filing Massuda made that month in her state court action against Rezko in which she stated that "the Panda Express restaurants have been fraudulently and secretly sold out from under [her] without any distribution of the proceeds to her." (*Massuda v. Rezko*, 06 L 3510 (Cir. Ct. Cook Cnty.), Dkt. # 32-1 at 4.)[3]

Massuda asserts that this statement proves nothing because "[t]hese are the words of [Massuda's] attorney, and [Massuda] is at a loss as to how she should be bound by statements made by her attorney." (Pl.'s Sur-Reply Opp.'n Mot. Dismiss, Dkt. # 40-1, at 1.) Contrary to her belief, Massuda is bound by the statement. *United States v. 7108 West Grand Ave., Chi.*, 15 F.3d 632, 634 (7th Cir. 1994) ("The clients are principals, the attorney is an agent, and under the law of agency the principal is bound by his chosen agent's deeds."). Massuda next claims she

---

    [2] In the interest of completeness, the Court notes that its analysis regarding the statutes of limitations also would apply to the other claims of civil conspiracy, breach of fiduciary duty, and unjust enrichment, *Estate of Brown,* 830 F. Supp. 2d at 511; *Khan,* 978 N.E.2d at 1028-29, as well as Massuda's claim under the Uniform Fraudulent Transfer Act, which is extinguished "within 4 years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or reasonably could have been discovered by claimant," 740 Ill. Comp. Stat. 160/10(a), if they were not already barred by the Settlement Agreement.

    [3] The Court may take judicial notice of a filing in another suit without converting a motion to dismiss into a motion for summary judgment. *Henson v. CSC Credit Servs*., 29 F.3d 280, 284 (7th Cir. 1994) (on a motion to dismiss, the Court can take judicial notice of public records such as state court filings).

had no idea in February 2007 that Defendants participated in the fraudulent conduct she alleges here and that despite her attempts to obtain discovery in her state court case against Rezko, she was prevented from doing so. (Pl.'s Sur-Reply Opp'n Mot. Dismiss, Dkt. # 40-1, at 2) ("In 2007, [Massuda] had been suing Rezko for almost a year and yet, because of all the criminal issues and Rezko's refusal to provide discovery, had not received anything whatsoever on what had been going on with Rezko's companies.")

Defendants challenge Massuda's contention that she did not know or could not have known about Defendants' purported role by relying on her allegations that it was "widely known" that Rezko was having legal troubles and that she had sued Rezko in 2006 to recover money owed by him with respect to her interest in Enterprises. But these allegations go to Rezko's role in the wrongdoing, not Defendants'. The Court acknowledges that Illinois courts have held that "[t]he plaintiff need not have knowledge of a specific defendant's [wrongful] conduct or of the existence of a cause of action before triggering the statute." *Nair v. Bloom*, 890 N.E.2d 1113, 1116 (Ill. App. Ct. 2008). But, although Massuda knew of the purportedly fraudulent sale and Rezko's role, Defendants have pointed to nothing showing that Massuda knew about their alleged role.

Pointing to Enterprises' LLC Agreement, Defendants assert that as a result of Massuda's ownership role in Enterprises, she was owed distributions of any cash flows no later than March 31 following the end of the fiscal year and financial statements within 90 days of the close of the fiscal year. (Defs.' Ex. D at §§ 5.02, 8.01(c).) They also note that Massuda was entitled to "inspect, extract, and copy" Enterprises' books and records during regular business hours. (*Id*. § 8.01(c).) According to Defendants, Enterprises' compliance or failure to comply with these provisions should have alerted Massuda to the possibility that Rezko had looted the proceeds from the sale. Even assuming it is appropriate to take judicial notice of the LLC Agreement, as noted above, Massuda knew of Rezko's role. It was Defendants' alleged participation of which Massuda states she was unaware.

It is true that a litigant may "plead itself out of court by alleging (and thus admitting) the ingredients of a defense." *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). But, the Court cannot conclude on the current record, and given the issues of fact, that Massuda has done so here.

2.   *Do Massuda's individual fraud allegations state a claim*?

Massuda alleges that "[t]he Defendants falsely and misleadingly represented to Dr. Massuda that her interest in Enterprises and PE Chicago was 'worthless.'" (Compl., Dkt. # 1, ¶ 49.) Massuda contends that this statement was fraudulent because two months after Defendants purportedly told her that her interest was worthless, Defendants paid Rezko personally millions of dollars for PE Chicago's 50% interest in the Rezko-Citadel partnership and then covered up that deal.

The elements of Illinois common law fraud are: "(1) a false statement of material fact; (2)

defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (citation and quotation marks omitted). Moreover, Rule 9(b) requires that fraud be plead with particularity.

Keeping in mind that this claim is one for fraud as to Massuda personally and not PE Chicago, the Court concludes that Massuda has failed to state a claim. Massuda fails to point to any facts in support of her claim that Defendants made the alleged statement intending that it would induce Massuda to act, that she relied on the truth of the statement, or that she suffered any damages as a result of the allegedly fraudulent statement. Moreover, Massuda fails to plead the claim with particularity including alleging who supposedly made the statement to her, where or how it was made (*i.e.*, personally, over the phone, by e-mail). *Borsellino v. Goldman Sachs Grp.*, 477 F.3d 502, 507 (7th Cir. 2007) (fraud claim must allege "the who, what, when, where, and how: the first paragraph of a newspaper story"). Finally, to the extent that Massuda attempts to plead fraud by omission, she has failed to allege facts showing that Defendants were under a duty to disclose material facts to her. *Connick*, 675 N .E.2d at 593.

Defendants also contend that this statement is one of opinion and is therefore not actionable as a matter of law. *Wilkinson v. Appleton*, 190 N.E.2d 727, 730 (Ill. 1963) ("Ordinarily erroneous statements as to matters of opinion, such as representations of the value of property, do not amount to fraud avoiding a contract made in reliance thereon."). The Court, however, is unwilling at this point of the litigation to dismiss Massuda's fraud claim with prejudice based on this proposition given that the record does not establish as a matter of law that the statement was one of opinion.

Massuda is given leave to replead the fraud claim within 14 days of the date of this order.

**IV.     Conclusion**

For the reasons stated herein, Defendants' motion to dismiss [22-1] is granted in part and

denied in part. All of Massuda's claims are dismissed except her individual fraud claim regarding Defendants' statement that her interest in PE Chicago was "worthless." Defendants' motion to take judicial notice of the state court filing [32-1] is granted. Plaintiff has 14 days from the date of entry of this order to file an amended fraud claim.

**Date**: July 16, 2013

                                        **Ronald A. Guzmán**
                                        **United States District Judge**