UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DR. FORTUNEE MASSUDA, | ) | |
| | ) | No. 12 CV 9683 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| PANDA EXPRESS, INC., PANDA | ) | |
| RESTAURANT GROUP, INC., | ) | |
| CITADEL PANDA EXPRESS, INC., | ) | |
| ANDREW CHERNG, and PEGGY | ) | |
| CHERNG, | ) | |
| | ) | January 15, 2014 |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

Before the court is the motion of Defendants Panda Express, Inc., Panda Restaurant Group, Inc., Citadel Panda Express, Inc., Andrew Cherng, and Peggy Cherng (collectively, "Defendants") for costs in the amount of $7,195.58 pursuant to Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920 as the prevailing parties in this action. The parties have consented to the jurisdiction of this court for resolution of this motion. (R. 98, Limited Consent.) For the following reasons, Defendants' motion is granted in the amount of $768.61:

**Background**

The facts of this case are detailed in the Memorandum Opinion and Order dated July 16, 2013. (R. 58, Mem. Op. & Order at 1-2.) In a nutshell, this case revolves around a rather complex web of business dealings dating back to the 1990s between Panda Express and various Tony Rezko-controlled companies, including

Rezko Concessions, Inc., Rezko Enterprises, LLC, and PE Chicago, LLC. (Id.) The seminal event occurred in June 2006 when Rezko's precarious financial situation resulted in Panda Express buying out PE Chicago's 50% interest in the so-called "Rezko-Citadel partnership"—a joint venture between Panda Express and Rezko Concessions, Inc.—but at a price well below the fair market value of that interest. (Id.) Plaintiff, who had invested $4 million in Rezko Enterprises, claimed that this transaction negatively affected her investment. (Id.) Ultimately, however, each of Plaintiff's claims against Defendants was dismissed with prejudice. (R. 58; R. 76.)

Defendants now move for costs in the amount of $7,195.58, (R. 83, Defs.' Mot. at 2), which Plaintiff contests as too high, (R. 88, Pl.'s Resp.). The parties conferred and then submitted a joint memorandum outlining their respective positions on each category of costs Defendants seek to recover. A summary of their respective positions are illustrated below:

| Costs | Defendants' Request | Plaintiff's Position |
|---|---|---|
| Clerk Fees | $200 | $200 |
| Subpoena Service | $490 | $360 |
| Printing | $3,189.05 | $0 |
| Exemplification | $228.61 | $228.61 |
| Hosting | $3,087.92 | $0 |
| **Total** | **$7,195.58** | **$788.61** |

## Analysis

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." The decision to award

2

costs is firmly within the discretion of the district court, *O.K. Sand & Gravel, Inc. v. Martin Marietta Techs., Inc.*, 36 F.3d 565, 571 (7th Cir. 1994), and the Seventh Circuit has recognized a strong presumption in favor of awarding costs to the prevailing party, *Park v. City of Chicago*, 297 F.3d 606, 617 (7th Cir. 2002).

The definition of "costs" as used in Rule 54(d) is set forth in 28 U.S.C. § 1920, which states that the court may tax as costs:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Although district courts are permitted only to award costs falling within the six enumerated categories, many circuits recognize that the courts have freedom to interpret the meaning of these categories. *See, e.g., SK Hand Tool Corp. v. Dresser Indus., Inc.,* 852 F.2d 936, 944 (7th Cir. 1988), *cert. denied,* 492 U.S. 918 (1989) (agreeing that courts may interpret "the meaning of the phrases used in § 1920"); *see also Alflex Corp. v. Underwriter's Labs., Inc.*, 914 F.2d 175, 177-78 (9th Cir. 1990) (discussing fees "encompassed" within § 1920(2)). This freedom is somewhat circumscribed, however, by the Supreme Court's recent decision in *Taniguchi v. Kan Pacific Saipan, Ltd.*, __U.S.__, 132 S. Ct. 1997, 2006 (2012), in which the Court narrowly interpreted the scope of § 1920(6)'s application and at the same time reminded lower courts that "we have never held that Rule 54(d) creates a

presumption of statutory construction in favor of the broadest possible reading of the costs enumerated in § 1920."

With respect to those costs Plaintiff opposes—subpoena service, printing, and hosting electronically stored information ("ESI")—Defendants, as the ones seeking the award, bear the burden of demonstrating that the costs were necessary and reasonable. *Trs. of the Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009). If this burden is satisfied, Plaintiff must then show that the costs are inappropriate. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005).

### A. Subpoena Service Costs

Defendants seek $490 in subpoena service costs. The bills for these costs reflect five "rush" premiums that increased the cost of normal service to $95 per subpoena, as well as a $15 charge for an affidavit of non-service on PE Chicago. (R. 93 at 3; R. 83, Ex. 3.) Defendants explain that the rush service was necessitated by Plaintiff's delay in responding to their discovery request. (R. 93 at 3 & Ex. B, Miari Decl. ¶¶ 3-7.) Plaintiff agrees that Defendants are entitled to recover this category of costs, but argues that she should not be responsible for the "rush" premium and asks this court to reduce the amount claimed by $130. (Id. at 3-4.)

Section 1920(1) permits the court to assess costs for clerk and Marshal fees, a category that includes costs related to service of subpoenas. 28 U.S.C. § 1920(1); *Lalowski v. Corinthian Sch., Inc.*, No. 10 CV 1928, 2013 WL 3774002, at *2 (N.D. Ill. July 18, 2013). However, the cost must be reasonable and necessary, *see Soler v.*

4

*Waite*, 989 F.2d 251, 255 (7th Cir. 1993), and "may not exceed the U.S. Marshal's rate at the time process was served," *Hernandez–Martinez v. Chipotle Mexican Grill, Inc.,* No. 11 CV 4990, 2013 WL 2384251, at *2 (N.D. Ill. May 30, 2013) (citing *Collins v. Gorman,* 96 F.3d 1057, 1060 (7th Cir. 1996)).  The cost for personal service of a subpoena by the United States Marshal's Service is $65 per hour "plus travel costs and any other out-of-pocket expenses."  28 C.F.R. § 0.114(a)(3). Therefore, even when a private process server is employed the Marshal's rate must be used to calculate the recoverable costs.  *Collins*, 96 F.3d at 1060 (finding it "best to resolve the ambiguity of § 1920 in favor of permitting the prevailing party to recover service costs that do not exceed the marshal's fees, no matter who actually effected service").

Defendants are not entitled to recover $95 per subpoena served in this case because this rate exceeds the Marshal's rate.  Their two subpoena invoices, (R. 83-3 at 10-11), do not indicate how many hours the process server took to effectuate service or whether they had to pay travel expenses in connection with the service of any of the five subpoenas.  Accordingly, Defendants are entitled to recover $340 ($65 per subpoena served and $15 for the attempted service on PE Chicago), which is $20 less than what Plaintiff was willing to pay.

**B.  Printing Costs**

Defendants seek $3,189.05 in printing costs.  The complaint Plaintiff filed in this case is apparently identical to that filed in *Sirazi v. Panda Express, Inc.*, No. 08 CV 2345 (N.D. Ill.), a case that was tried to a jury and ultimately dismissed with

5

prejudice pursuant to a joint stipulation, (No. 08 CV 02345, R. 379). Defendants argue that because their attorneys were not the attorneys in *Sirazi*, they were obligated to print the entire *Sirazi* trial record, including the trial transcripts and evidence deemed necessary to create trial exhibits. (R. 93 at 2.) Plaintiff counters that Defendants' attorneys could have secured the *Sirazi* file and reviewed it without having to duplicate it, (id. at 2-3), and that there was no need to print every exhibit from the *Sirazi* trial given that this case never got past the motion to dismiss phase, (R. 88, Pl.'s Resp. at 2). Plaintiff also argues that Defendants' invoices fail to provide any breakdown or explanation for the charges. (Id.)

"The burden is on the party seeking reimbursement for photocopying costs to show that the photocopied items were necessary; if that party fails to meet the burden, the court should not award costs for those items." *Ochana v. Flores,* 206 F. Supp. 2d 941, 946 (N.D. Ill. 2002). While a prevailing party need not provide a detailed breakdown of the documents copied that is so descriptive as to make it economically impossible to recoup copying costs, the party must provide enough information to allow the court to know what is taxable and what is not. *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991). Furthermore, only those costs for copies of "materials actually prepared for use in presenting evidence to the court" are recoverable. *Perry v. City of Chicago,* No. 08 CV 4730, 2011 WL 612342, at *2 (N.D. Ill. Feb. 15, 2011); *see also McIlveen v. Stone Container Corp.,* 910 F.2d 1581, 1584 (7th Cir. 1990). That includes "copies attributable to discovery and copies of pleadings, motions, and memoranda

6

submitted to the court," but not "copies made solely for the convenience of counsel." *Id.; see also Alexander v. CIT Tech. Fin. Servs., Inc.*, 222 F. Supp. 2d. 1087, 1089 (N.D. Ill. 2002) (finding that copy charges for discovery and courtesy copies to the court are recoverable, but not charges of copies made for attorney convenience).

Defendants fail to satisfy their burden of demonstrating that they needed to copy the entire *Sirazi* file. While Defendants assert that it was necessary to print the record from *Sirazi* to become familiar with the case, they fail to explain why they could not have simply reviewed the file or why they deemed it necessary, as Plaintiff correctly argues, to print all of the trial exhibits. Although this court recognizes the value in reviewing the *Sirazi* case in preparing for this case, Defendants' conclusory statements that they needed to copy the entire trial record are not enough to satisfy the narrow constraints of § 1920(4). *See Fait v. Hummel*, 01 CV 2771, 2002 WL 31433424, at *5 (N.D. Ill. Oct. 30, 2001) (finding that conclusory affidavit averring that copying costs were necessary does not assist the court in determining the propriety of taxing costs); *Mi–Jack Prods. v. Int'l Union of Operating Engrs.*, 94 CV 6676, 1996 WL 139249, at *2 (N.D. Ill. Mar. 26, 1996) ("Generally, conclusory assertions that copying costs were necessary are not convincing.").

Defendants also failed to provide the requisite information needed to determine whether the charges themselves are reasonable. They submitted 47 pages of invoices for "in house duplication," (R. 83-4), but none of them provide any description of the documents copied, the number of copies made, or the price

7

charged per copy. Instead, the vast majority of the line items (roughly 60 lines per page) are ascribed an identical "code" for "in house duplication" and an identical "narrative" of "in house duplication charge via Equitrac," as well as the total printing cost ranging from 10 cents to $117.50 per line item. (R. 83-4 at 6-48.) The court cannot discern from these pages what documents were copied and for what purpose. Accordingly, Defendants' request for $3,189.05 in printing costs is denied. *See Trading Techs. Intern., Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 979 (N.D. Ill. 2010) (holding that where the prevailing party has failed to provide sufficient information to ascertain that the costs are authorized, denial is an appropriate outcome); *see also Telular Corp. v. Mentor Graphics Corp.*, No. 01 CV 431, 2006 WL 1722375, at *5 (N.D. Ill. June 16, 2006) (denying costs where prevailing party failed to provide sufficient information to show which copies were for the court, for opposing counsel, or for attorney convenience); *Vigortone Ag Prods., Inc., v. PM Ag Prods., Inc.*, No. 99 CV 7049, 2004 WL 1899882, at *8 (N.D. Ill. Aug. 12, 2004) (noting that a court "should deny photocopying costs where the prevailing party fails to address the purpose of the copies, whether multiple copies were made of the same documents, or what documents were copied").

**C.     Hosting Costs**

Defendants seek $3,087.92 they spent to upload and to host three boxes of documents Plaintiff produced during discovery on a platform called "Relativity." (R. 83, Defs.' Mot. ¶ 14 & Ex. B, Mircheff Decl. ¶ 9.) Relativity is "a standard document management service that allows attorneys to organize, manage and

review documents electronically in connection with litigation." (Id. Ex. B, Mircheff Decl. ¶ 9.) Defendants assert that these costs were "reasonable and necessary" expenses related to their defense "particularly in light of the extremely short time frame in which Panda Express had to process these documents in order to conduct follow-up discovery and/or use them in connection with depositions that were scheduled." (Id.) Plaintiff objects to these costs in their entirety because, she argues, ESI "hosting" costs are not recoverable and the amount is unreasonably high and unnecessary. (R. 88, Pl.'s Resp. at 1-2.) She points out that Defendants provided her attorney with ESI on CD-ROMs but that her counsel was able to "host" it on his computer at no cost. (R. 93 at 1-2.)

Defendants' request for their ESI hosting costs is governed by § 1920(4), which addresses "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). The question of whether prevailing parties may recover ESI hosting costs has not been expressly answered by the Seventh Circuit, although the court has opined twice on the topic of ESI discovery in slightly different contexts. In *Northbrook Excess*, 924 F.2d at 643, the prevailing party sought costs relating to a computerized system "designed, in part, to reduce the time and expenses of reviewing documents, and reduce storage and duplication expenses." The Seventh Circuit declined to accept this expenditure as a taxable cost. *Id*. at 643-44. Additionally, the Seventh Circuit noted that "there appears to be no authority for

9

recovery of storage costs pursuant to 28 U.S.C. § 1920." *Id.* at 644 n.14.[1] More recently in *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009), the Seventh Circuit affirmed an award of costs associated with "converting computer data into a readable format in response to plaintiffs' discovery requests." The court concluded that such costs are recoverable under § 1920. *Id.*

A number of courts within this district have also addressed the topic of ESI discovery under § 1920. In *Rawal v. United Airlines, Inc.*, No. 07 C 5561, 2012 WL 581146, at *2 (N.D. Ill. Feb. 22, 2012), the prevailing party sought over $14,000 in costs for "electronically producing and processing email accounts and user-created files into searchable format in order to search relevant electronic mail and files." The court limited the award, however, to those costs it considered to be the modern-day equivalent of exemplification or making copies, such as the electronic scanning of documents. *Id.* Similarly, in *Windy City Innovations, LLC v. America Online, Inc.*, No. 04 CV 4240, 2006 WL 2224057, at *3 (N.D. Ill. July 31, 2006), the court rejected costs associated with Optical Character Recognition conversion, coding services, and keyword searching, reasoning that these costs were for services typically performed by attorneys or other legal personnel. The *Windy City* court also rejected costs associated with document conversion because the opposing party did not request the more expensive conversion, but simply sought the production of

---

[1] In *Johnson v. Allstate Ins. Co.*, No. 07-cv-0781-SCW, 2012 WL 4936598, at *3 n.2 (S.D. Ill. Oct. 16, 2012), discussed *infra*, the court discounted the controlling effect of *Northbrook Excess* as to its findings on the computerized litigation system, noting that since § 1920(4) was amended in 2008, it is fair to assume that "*Northbrook Excess* is no longer sufficient to understand the contours of § 1920(4)."

documents maintained in any format—hard, magnetic, or electronic. *Id.* at *4; *but see Comrie v. IPSCO Inc.*, No. 08 CV 3060, 2010 WL 5014380, at *3-*4 (N.D. Ill. Dec. 1, 2010) (allowing costs for conversion, processing, and extracting "where necessary to IPSCO's ESI production").

As for the specific question of costs related to hosting ESI, a few courts have approached this issue head-on with varying results. In *Johnson*, 2012 WL 4936598, at *2, *5, the court examined whether to allow the defendant to recover nearly a million dollars in costs under § 1920(4), including almost $500,000 in "electronic data hosting" costs and another $450,000 for the creation of a litigation database for "processing and producing electronic copy documents," "converting documents from one format to another, more searchable form," and for "processing and producing hard copies." Relying in large part on *Heckler* and on the Third Circuit's comprehensive analysis in *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012), the *Johnson* court concluded that costs associated with converting data into a readable format are compensable under § 1920(4), but that costs related to the "gathering, preserving, processing, searching, culling and extracting of ESI simply do not amount to 'making copies.'" *Id.* at *6 (quoting *Race Tires*, 674 F.3d at 170). The court also rejected those costs associated with the storage of data produced by the conversion of documents into a readable form on grounds that "[n]either the language of § 1920(4), nor its history, suggests that Congress intended to shift all the expenses of a particular form of discovery—production of ESI—to the losing party." *Id.* at *7. In contrast, the court in *Goldberg*

11

*v. 401 North Wabash Venture LLC*, No. 09 CV 6455, 2013 WL 4506071, at *7 (N.D. Ill. Aug. 23, 2013), permitted 50% of the costs related to "electronic discovery"—a category that included "electronically processing, hosting, and producing documents." In deciding to reduce the amount sought by half, the court observed the "scant legal authority in this circuit and district giving litigants guidance in seeking these costs under Rule 54(d)(1) and Section 1920(4)." *Id.*

The Third Circuit in *Race Tires* took a long historical look at Rule 54(d) and § 1920 in its effort to resolve the question of "whether all charges imposed by electronic discovery vendors to assist in the collection, processing, and production of electronically stored information ('ESI') are taxable against the losing party" pursuant to § 1920(4). 674 F.3d at 159. The court noted the "significant role that electronic discovery plays in litigation today" as its guiding reason for wanting to clarify the bases upon which electronic discovery expenses are taxable.[2] *Id*. at 160. That case involved more than $365,000 in ESI discovery charges, including charges for file format conversion, data processing, and keyword searching. *Id*. at 159-60. Focusing on whether the services the vendors performed were akin to copying, the

---

[2] The court noted that in 2004, "approximately 95% of all documents were created by electronic means." 674 F.3d at 160 n.1. The effect of this technological explosion on the Federal Rules can be seen in changes to Federal Rule of Civil Procedure 26(b)(2)(B), which now requires parties to produce ESI unless they can show that the information "is not reasonably accessible because of undue burden or cost," Fed. R. Civ. P. 26(b)(2)(B), as well as in the adoption of Federal Rule of Evidence 502. *Id*.; *see also* Fed. R. Evid. 502, Advisory Committee Notes (explaining how Rule 502 was adopted in part to respond to problems associated with electronic discovery). This fact notwithstanding, the court declined to equate the extension of these rules and their provision for the discovery of ESI as a basis upon which to expand recoverable expenses under § 1920(4). *Race Tires*, 674 F.3d at 170-71.

Third Circuit concluded that "only the scanning of hard copy documents, the conversion of native files to TIFF, and the transfer of VHS tapes to DVD" could be considered copying. *Id*. at 171. In approving about $30,000 in costs, thus reversing the bulk of the district court's award, the *Race Tires* court narrowly construed § 1920, stating:

> [t]he decisions that allow taxation of all, or essentially all, electronic discovery consultant charges, such as the District Court's ruling in this case, are untethered from the statutory mooring. Section 1920(4) does not state that all steps that lead up to the production of copies of materials are taxable. It does not authorize taxation merely because today's technology requires technical expertise not ordinarily possessed by the typical legal professional. It does not say that activities that encourage cost savings may be taxed. Section 1920(4) authorizes awarding only the cost of making copies.
>
> It may be that extensive "processing" of ESI is essential to make a comprehensive and intelligible production. Hard drives may need to be imaged, the imaged drives may need to be searched to identify relevant files, relevant files may need to be screened for privileged or otherwise protected information, file formats may need to be converted, and ultimately files may need to be transferred to different media for production. But that does not mean that the services leading up to the actual production constitute "making copies."

*Id*. at 169.

The Third Circuit's narrow interpretation of § 1920(4) finds support in the Supreme Court's decision two months later in *Taniguchi*. There the Supreme Court confronted the issue of whether costs associated with the translation of documents, as opposed to oral translation services, from Japanese to English were recoverable under § 1920(6). *Taniguchi*, 132 S. Ct. at 2002-07. The Court refused to expand the definition of "interpreter" to include interpretation of written materials and emphasized that "[t]axable costs are limited to relatively minor, incidental

13

expenses" and "are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators." *Id*. at 2005-06.

This court agrees with *Race Tires*, *Rawal* and *Johnson* that ESI discovery costs associated with the conversion of ESI into a readable format, such as scanning or otherwise converting a paper version to an electronic version or converting native files to TIFF (if agreed upon by the parties to be the production format), are compensable under § 1920(4). But costs related to the "gathering, preserving, processing, searching, culling and extracting of ESI simply do not amount to 'making copies'" and thus are non-taxable. *Johnson,* 2012 WL 4936598, at *6 (quoting *Race Tires*, 674 F.3d at 170); *see also Rawal*, 2012 WL 581146, at *2 (costs under § 1920(4) "do not encompass work that goes beyond 'merely converting a paper version to an electronic format'" (quoting *Francisco v. Verizon S., Inc.*, 272 F.R.D. 436, 446 (E.D. Va. 2011))). Applying these principles to the specific question of online hosting costs, this court finds that these costs may be recoverable only if hosting amounted to "copying" of ESI for production.

In this case the hosting of three boxes of Plaintiff's documents did not constitute "copying." Defendants' two vendor invoices show that the services rendered were for "DOCUMENT SEARCH AND RETRIEVAL" and for "MONTHLY_RELATIVITY_DISK_STORAGE." (R. 83-4 at 45-48.) Defendants describe these services as "uploading and hosting," and explain that Relativity allows "attorneys to organize, manage and review documents." (R. 83, Defs.' Mot., Ex. B, Mircheff Decl. ¶ 9.) Defendants also did not demonstrate that the Relativity

14

services included some form of conversion of data akin to "making copies" for use in this case. Without evidence of this critical nature, this court has no authority to award the hosting costs in this case. *See Ancora Techs., Inc. v. Apple, Inc.*, No. 11-CV-06357 YGR, 2013 WL 4532927, at *3 (N.D. Cal. Aug. 26, 2013) (noting the tight construction mandated by *Taniguchi* and accordingly denying electronic discovery storage costs as not falling within the narrow limits of § 1920(4)). Defendants explain that it was "reasonable and necessary" for them to have used Relativity because they had very little time to process the documents. (R. 83, Ex. B, Mircheff Decl. ¶ 9.) But § 1920(4), for better or worse, is not concerned with attorney efficiency or convenience. It is also significant to note that the documents uploaded onto Relativity were documents already copied and produced by Plaintiff. Accordingly, Defendants' request for $3,087.92 in hosting cost is denied.

## Conclusion

For the foregoing reasons, Defendants' Motion for Costs is granted in the amount of $768.61.

**ENTER:**

**Young B. Kim**
**United States Magistrate Judge**